UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| RXEED, LLC,<br>Plaintiff,<br>-against-<br>CAREMARK, LLC,<br>Defendant. | 26-CV-331 (JGLC)<br><br>**OPINION AND ORDER** |

JESSICA G. L. CLARKE, United States District Judge:

Plaintiff Rxeed, LLC brings New York state antitrust and tort claims against pharmacy benefit manager Defendant Caremark, LLC. Plaintiff alleges that Defendant has engaged in anticompetitive practices that damage Plaintiff's business relationships with New York retail pharmacies. Defendant moves to dismiss Plaintiff's Amended Complaint on the grounds of *res judicata* and failure to state a claim. The Court determines that *res judicata* does not bar Plaintiff's present suit. Nevertheless, the Court dismisses Plaintiff's Donnelly Act and tortious interference with contractual relations claims because Plaintiff fails to allege multilateral anticompetitive conduct and specific contractual breaches. However, the Court declines at this juncture to dismiss Plaintiff's tortious interference with prospective economic advantage claim.

## BACKGROUND

### I. Facts

The facts are taken from the First Amended Complaint and assumed to be true for the purpose of this motion. ECF No. 32 ("FAC"); *see ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 93 (2d Cir. 2007) (assuming facts from the complaints and supporting documents "to be true in reviewing a Fed. R. Civ. P. 12(b)(6) dismissal").

Plaintiff Rxeed, LLC ("Rxeed") is an Illinois company "that operates an online marketplace for retail pharmacies to buy and sell prescription drugs." FAC ¶ 3. Specifically, Plaintiff operates a "proprietary online portal for specific patient needs." *Id.* ¶ 5. Defendant Caremark, LLC ("Caremark") is an Arizona-based limited liability company and operates as a pharmacy benefits manager ("PBM") throughout the United States.[1] *Id.* ¶ 4. Caremark is owned by the CVS Corporation ("CVS"), which also operates hundreds of retail pharmacy stores throughout the country. *Id.* As a PBM, Caremark manages various federal and private health care plans, and processes claims for prescription drugs submitted by pharmacies, including "hundred of New York pharmacies," on behalf of patients insured under federal and New York state healthcare programs, as well as private health insurance companies. *Id.* ¶ 10. In New York, Caremark manages prescription drug benefits for the New York Medicaid Program "and/or" Part D of the Federal Medicare Program, along with other private insurance plans. *Id.* ¶ 19.

Caremark issues a "Provider Manual" (the "Manual") to each in-network retail pharmacy. *Id.* ¶ 15. This Manual "is essentially a contract between Defendant Caremark and its retail pharmacy members." *Id.* Section 2.01.01(a) of Caremark's Manual provides that: "All Providers must comply with all applicable Laws and provide all Pharmacy Services and Covered Items in a professional manner and in compliance with the highest industry practice standards. Failure to

[1] Caremark asserts that it is a limited liability company organized in California, with a sole member that is another limited liability company, whose sole member is a Rhode Island corporation with its principal place of business in Rhode Island. ECF No. 1 at 1. That would make Caremark a citizen of Rhode Island. *See Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 60 (2d Cir. 2016) ("In general, the citizenship of a limited liability company is determined by the citizenship of each of its members."). Rxeed is a limited liability company whose sole member is an individual who resides in Illinois. ECF No. 1 at 1. Therefore, it is a citizen of Illinois. *See Carter*, 822 F.3d at 60. And, Plaintiff seeks over $2 million in lost revenue in this action. *See* ECF No. 32. As such, the Court has subject matter jurisdiction over this case under the diversity statute. *See* 28 U.S.C. § 1332.

comply may result in remedial action by Caremark including, but not limited to, Provider Agreement termination." *Id.* ¶ 16.

When processing a prescription drug claim, Caremark requires retail pharmacies to list the drug on Caremark's drug formulary/list and prove in an audit that the drug was properly purchased. *Id.* ¶ 11. In doing this, Caremark "decid[es] what claims can be processed for any specific prescription drug, and what purchase history documents can be used to prove purchase of that drug by the filling pharmacy." *Id.* ¶ 12. Retail pharmacies are "virtually unable to provide" drugs that Caremark refuses to cover, or drugs for which Caremark refuses to accept the purchase history, to the 98% of customers that obtain prescription drugs through their healthcare insurance coverage. *Id.* ¶ 13. Patients cannot directly choose their PBM—rather, "patients covered under a healthcare plan whose prescription benefits are administered by Defendant Caremark are captive to Caremark's terms and conditions." *Id.* ¶ 14. Similarly, Plaintiff alleges that independent retail pharmacies cannot "realistically substitute out-of-network, cash-paying patients for in-network insured patients, as patients are economically locked into utilizing the pharmacy networks dictated by their PBMs." *Id.* ¶ 35.

Caremark periodically audits all of its retail pharmacy members. *Id.* ¶ 20. These audits are "time consuming" and "expensive" for the pharmacies. *Id.* ¶ 47. When executing an audit, Caremark requires retail pharmacies to prove that they purchased the prescription drugs that they dispensed through a proper "purchase history." *Id.* ¶ 20. Although retail pharmacies throughout New York use Rxeed's platform to buy and sell prescription drugs, Caremark rejects the purchase histories that Rxeed provides to its New York retail pharmacy customers. *Id.* ¶ 21. For example, if a New York retail pharmacy purchases $1,000 worth of prescription drugs from another pharmacy using Rxeed's online platform, Caremark refuses to accept the purchase history that

Rxeed provides to the purchasing pharmacy as evidence of the purchase. *Id.* ¶ 22. Plaintiff alleges that Caremark does this in order "to prevent network member pharmacies from purchasing needed inventory through Plaintiff Rxeed's online platform." *Id.* ¶ 23. After rejecting Rxeed's purchase histories, Caremark "claw[s] back tens of millions of dollars in recoupments from numerous Rxeed New York retail pharmacy customers" and "terminate[s] independently owned retail pharmacies from its insurance network to reduce competition with its parent CVS, which operates hundreds of retail pharmacies throughout New York." *Id.*

Between April 2018 to the present, Rxeed developed and maintained its online marketplace for its retail pharmacy customers. *Id.* ¶ 26. Thousands of retail pharmacies throughout the United States rely heavily on Rxeed's marketplace service to facilitate the acquisition of prescription drugs. *Id.* ¶ 27. On or about March 2025, one of Rxeed's customers, a large New York retail pharmacy, informed Rxeed that Caremark "refused to accept Rxeed's purchase history, even though Rxeed provided Caremark with copies of all documents, checks, etc. to show that the Pharmacy properly acquired its prescription drugs in compliance with the" law. *Id.* ¶ 28. Dozens of other New York pharmacies also advised Rxeed that Caremark "suddenly and without notice" refused to accept their purchase histories for medications acquired through Rxeed, even though those same purchasing pharmacies had long purchased part of their inventories through Rxeed without any objection by Caremark. *Id.* ¶ 29. In doing this, Caremark has "recoup[ed] millions of dollars in lawfully billed claims" from retail pharmacies that purchased drugs from Rxeed. *Id.* ¶¶ 55–56.

Furthermore, Caremark has "repeatedly sought to terminate independent pharmacies from its network for doing business with Rxeed." *Id.* ¶ 44. Caremark's auditors have also "expressly identif[ied] Rxeed by name as a party that Caremark's in-network retail pharmacies should not

transact with." *Id.* ¶ 52. Caremark's refusal to accept Rxeed's purchase histories has "force[d] Rxeed's New York retail pharmacy customers to stop doing business with Rxeed under the threat of claw backs and network terminations" and caused Rxeed "to lose dozens of retail pharmacy customers in New York." *Id.* ¶¶ 30–31. Caremark alleges $2,000,000 in lost revenue from its customers. *Id.* ¶ 58.

## II. Procedural History

### a. The New Jersey Litigation

Rxeed previously sued Caremark in the District of New Jersey. *See Rxeed, LLC v. Caremark, LLC*, No. 24-CV-1111 (MEF) (AME) ("*N.J. Litig.*"). In this lawsuit, which Plaintiff initiated on February 26, 2024, Plaintiff brought a claim under 42 U.S.C. § 1983, alleging violation of the Drug Supply Chain Security Act ("DSCSA"), 21 U.S.C. § 360eee-1(d)(1)(A)(ii), and various New Jersey state law torts. *N.J. Litig.*, ECF No. 1; *see also N.J. Litig.*, ECF No. 4 ("N.J. Am. Compl."). The New Jersey tort claims included tortious interference with prospective economic advantage, violation of the New Jersey Antitrust Act, N.J. Stat. 56:9-3 and 56:9-10, and unfair competition under New Jersey common law. *Id.* On May 22, 2024, Caremark moved to dismiss Rxeed's complaint. *N.J. Litig.*, ECF No. 5.

On March 20, 2025, the District of New Jersey granted Caremark's motion to dismiss and terminated the case. *N.J. Litig.*, ECF No. 20 ("N.J. Opinion"). The court dismissed Rxeed's DSCSA claim under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim and declined supplemental jurisdiction over the state law claims. *Id.* at 1. Specifically, the court determined that Plaintiff's DSCSA claim must be dismissed because Defendant was not a state actor and did not take state action for Section 1983 purposes. *Id.* at 6–8. The court then declined

to exercise supplemental jurisdiction over Plaintiff's three state law claims and dismissed them without considering their merits. *Id.* at 9.

Rxeed appealed the district court's determination, but the Third Circuit affirmed the court's dismissal. *See Rxeed, LLC v. Caremark, LLC*, No. 25-1638, 2026 WL 281168 (3d Cir. Feb. 25, 2026) (Bibas, J.). The Third Circuit concluded that the DSCSA did not provide "an unambiguously conferred right" to Plaintiff that was "enough for a § 1983 cause of action." *Id.* at *1 (quoting *Gonzaga Univ. v. Doe*, 536 U.S. 273, 283 (2002)). The Third Circuit also noted in affirming the New Jersey court's dismissal "with prejudice," that "Rxeed [did] not argue that the District Court, after dismissing its federal claim, should have exercised supplemental jurisdiction over its state-law claims." *Id.* at *2. Therefore, like the District of New Jersey, the Third Circuit did not consider the merits of Plaintiff's New Jersey state law claims.

**b. Present Litigation**

On October 20, 2025, Rxeed initiated this lawsuit in the Westchester County Supreme Court. ECF No. 1 at 2; ECF No. 1-1 at 14. On January 14, 2026, Defendant removed this action to this Court on the basis of diversity jurisdiction. *Id.* at 1 (citing 28 U.S.C. §§ 1332, 1441, 1446). On January 28, 2026, Defendant moved to dismiss, or alternatively to stay the litigation. ECF No. 14. In response, Plaintiff filed a notice of intent to file an amended complaint. ECF No. 23. Additionally, Plaintiff did not object to Defendant's request to stay the case pending resolution of its motion to dismiss or any subsequent motion to dismiss amended pleadings. ECF No. 25-1 at 6. Accordingly, on March 2, 2026, the Court stayed the case, pending resolution of any motion to dismiss. ECF No. 26.

On March 9, 2026, Plaintiff filed its First Amended Complaint. FAC. Plaintiff brings three claims: (1) violation of the New York Donnelly Act, (2) tortious interference with

contractual relations, and (3) tortious interference with prospective economic advantage. *Id.* ¶¶ 61–85. Regarding its antitrust claim, Plaintiff identifies the relevant product markets as "the market for the purchase/sale of prescription drugs between retail pharmacies and the market for dispensing services," and the relevant geographic market as New York state. *Id.* ¶ 33.

On March 27, 2026, Defendant filed the present motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). ECF No. 33. On April 13, 2026, Plaintiff filed its response and opposition to the motion to dismiss. ECF Nos. 37–38. On April 20, 2026, Defendant filed its reply. ECF No. 39 ("Reply").

**LEGAL STANDARD**

In reviewing a motion to dismiss under Rule 12(b)(6), the Court must "constru[e] the complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." *Goldstein v. Pataki*, 516 F.3d 50, 56 (2d Cir. 2008) (internal citation omitted). A claim will survive a Rule 12(b)(6) motion only if the plaintiff alleges facts sufficient "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that a defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678. If a complaint does not state a plausible claim for relief, it must be dismissed. *Id.* at 679.

## DISCUSSION

Defendant moves to dismiss Plaintiff's Amended Complaint on the grounds of *res judicata* and failure to state a claim. ECF No. 34 ("MTD") at 5, 8. The Court first determines that *res judicata* does not bar Plaintiff's present lawsuit. The Court then grants dismissal of Plaintiff's Donnelly Act and tortious interference with contractual relations claims, but denies dismissal of Plaintiff's tortious interference with prospective economic advantage claim.

### I. *Res Judicata* Does Not Bar Plaintiff's Claims

Caremark argues that based on *res judicata*, Plaintiff's prior lawsuit in the District of New Jersey bars the present lawsuit. The Court disagrees.

*Res judicata*, or claim preclusion, bars re-litigation following the disposition of prior actions. *See Mahmood v. Rsch.in Motion Ltd.*, 905 F. Supp. 2d 498, 501–52 (S.D.N.Y. 2012), *aff'd*, 515 F. App'x 891 (Fed. Cir. 2013). "Res judicata bars new claims out of the same transactions regardless of whether they are winners or losers . . . because the party already had one bite at the apple; not because the second bite would necessarily taste the same (or be decided the same way) as the first." *Id.* at 502. "At the motion to dismiss stage, dismissal based on *res judicata* or collateral estoppel is appropriate where it is clear from the face of the complaint and from matters of which the Court takes judicial notice that plaintiff's claims are barred." *Bass v. Pershing*, No. 25-CV-2478 (VEC), 2025 WL 3281561, at *4 (S.D.N.Y. Nov. 25, 2025), *motion for relief from judgment denied*, 2025 WL 3443269 (S.D.N.Y. Dec. 1, 2025) (internal citations and quotation marks omitted).

*Res judicata* applies when "(1) the previous action involved an adjudication on the merits; (2) the previous action involved the plaintiffs or those in privity with them; [and] (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action."

*Monahan v. N.Y.C. Dep't of Corr.*, 214 F.3d 275, 285 (2d. Cir. 2000). "The party claiming res judicata bears the burden of proving that the second action is barred, and it is not 'dispositive that the two proceedings involved the same parties, similar or overlapping facts, and similar legal issues.'" *Graham v. Select Portfolio Servicing, Inc.*, 156 F. Supp. 3d 491, 509 (S.D.N.Y. 2016) (quoting *Comput. Assocs. Int'l, Inc. v. Altai, Inc.*, 126 F.3d 365, 369 (2d Cir. 1997)). Defendant has not demonstrated that the first and third element are satisfied here.

First, the prior New Jersey litigation involved an adjudication that was on the merits as to the Section 1983 claim only, but not as to the New Jersey tort and antitrust claims. Defendant makes much of the fact that the Third Circuit affirmed the New Jersey district court's dismissal "with prejudice." MTD at 1–2, 6 (quoting *Rxeed, LLC*, 2026 WL 281168, at *2). However, the Third Circuit made clear that the dismissal of the state claims was not on appeal. *See Rxeed, LLC*, 2026 WL 281168, at *2 ("And Rxeed does not argue that the District Court, after dismissing its federal claim, should have exercised supplemental jurisdiction over its state-law claims."). Furthermore, the substance of both the Third Circuit's and the district court's opinions clearly show that only dismissal of the DSCSA claim was with prejudice. *See id.*; N.J. Opinion at 9, 9 n.6 ("dismiss[ing] the three state-law claims" on the basis of declining to exercise supplemental jurisdiction, because "the Defendant ask[ed] the Court to dismiss the state-law counts if it dismisse[d] the federal one, and the Plaintiff [did] not object" (internal citations omitted)). Neither the district court nor the Third Circuit considered the merits of Rxeed's state law claims. *Id.*

Dismissal based on lack of subject matter jurisdiction "is not on the merits" and "can have no *res judicata* effect." *Nowak v. Ironworkers Loc. 6 Pension Fund*, 81 F.3d 1182, 1188 (2d Cir. 1996). Accordingly, when courts decline to exercise supplemental jurisdiction over state law

claims, those claims were not decided on the merits. *See Kolari v. N.Y.-Presbyterian Hosp.*, 455 F.3d 118, 119 (2d Cir. 2006) (vacating a dismissal with prejudice of state claims, when the district court should not have exercised supplemental jurisdiction over those claims, and remanding "with instructions to dismiss those claims without prejudice"); *Emigra Grp., LLC v. Fragomen, Del Rey, Bernsen & Loewy, LLP*, 612 F. Supp. 2d 330, 368 (S.D.N.Y. 2009) ("Where a district court has dismissed before trial all claims over which it has original jurisdiction, the district court ordinarily should decline to exercise its supplemental jurisdiction and therefore dismiss pendent state claims *without prejudice*." (emphasis added)); *Fei Hang Chen v. Jing Fong Rest., Inc.*, 582 F. Supp. 2d 602, 603 (S.D.N.Y. 2008) ("When, however, the federal claims are dismissed, a federal court may, in its discretion, retain supplemental jurisdiction over the state claims or dismiss them without prejudice to being re-filed in state court.").

Similarly, *res judicata* does not apply when "formal jurisdictional or statutory barriers prevented [a plaintiff] from presenting to a court in one action the entire claim including any theories of recovery or demands for relief that might have been available to him under applicable law." *Jacobson v. Fireman's Fund Ins. Co.*, 111 F.3d 261, 265 (2d Cir. 1997) (cleaned up). Therefore, the prior dismissal of the New Jersey state law claims on jurisdictional grounds was clearly not on their merits, and the dismissal of the DSCSA claims on state action and private right of action grounds does not bar Plaintiff's antitrust and tort claims. Accordingly, *res judicata* does not bar present attempts to bring similar state law antitrust and business tort claims.

Furthermore, the third element—whether "the claims asserted in the subsequent action were, or could have been, raised in the prior action"—is unmet here. *Monahan*, 214 F.3d at 285.

> Claims arising subsequent to a prior action, based on conduct occurring after the commencement of the earlier suit, and sufficient to state a cause of action without the need to incorporate facts preceding the first suit need not, and often perhaps could not, have

> been brought in that prior action, and so are not barred by *res judicata* regardless of whether they are premised on facts representing a continuance of the same course of conduct. To be clear, when a defendant commits repeated acts, each of which can independently support a cause of action, claim preclusion principles *will* require plaintiffs seeking relief as to all of the defendant's conduct to bring together the causes of action that have already arisen when the litigation commences, provided that such acts are based on the same connected series of transactions. Thus, if a party sues for a breach of contract, *res judicata* will preclude the party's subsequent suit for any claim of breach that had occurred prior to the first suit. *Res judicata* will not, however, bar a subsequent suit for any breach that had not occurred when the first suit was brought.

*TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 500–01 (2d Cir. 2014) (internal citation and quotation marks omitted). In other words, "[i]f a defendant engages in actionable conduct after a lawsuit is commenced, the plaintiff may seek leave to file a supplemental pleading . . . [b]ut the plaintiff is not required to do so, and his election not to do so is not penalized by application of res judicata to bar a later suit on that subsequent conduct." *TechnoMarine SA*, 758 F.3d at 501 (internal citation and quotation marks omitted).

Here, Plaintiff alleges that Defendants engaged in conduct that, though largely identical to the conduct alleged of in the New Jersey litigation, occurred after the prior suit was initiated on February 26, 2024. *N.J. Litig.*, ECF No. 1. Although Plaintiff, in its initial complaint in this action, alleged that Defendant engaged in misconduct predating the New Jersey action, *see* ECF No. 1-1 at 10 ¶ 31, Plaintiff has also alleged ongoing conduct by Caremark that independently gives rise to its claims, including continuous audits, rejection of Rxeed's provided purchase histories, infliction of claw backs, and termination of Rxeed's New York retail pharmacy customers. FAC ¶¶ 20–23. This alleged, continuing conduct likewise makes *res judicata* inappropriate here. *See Marcel Fashions Grp., Inc. v. Lucky Brand Dungarees, Inc.*, 779 F.3d 102, 105 (2d Cir. 2015) ("[A] prior judgment . . . did not bar Plaintiff from instituting a second

suit seeking relief for alleged further infringements that occurred subsequent to the earlier judgment"); *Fresh Del Monte Produce Inc. v. Del Monte Foods, Inc.*, No. 13-CV-8997 (JPO), 2016 WL 236249, at *5 (S.D.N.Y. Jan. 20, 2016) (denying dismissal of claims arising from conduct subsequent to a prior litigation, "even [when] the subsequent acts are (but for timing) the same as those at issue in the prior case").

Therefore, because Defendant has not established the first and third elements, the Court denies dismissal of Plaintiff's Amended Complaint on the ground of *res judicata.*

## II. Caremark's Motion to Dismiss Plaintiff's Claims for Failure to State a Claim Is Denied in Part and Granted in Part

Defendant moves to dismiss all three of Plaintiff's claims for failure to state a claim. The Court considers each claim in turn. First, the Court determines that Plaintiff has not sufficiently pled a conspiracy or a reciprocally beneficial relationship as required to make out its Donnelly Act claim. Second, similarly, the Court concludes that Plaintiff has not alleged specific breaches of contracts to make out its tortious interference with contractual relations claim. Finally, the Court determines that Plaintiff has sufficiently alleged its tortious interference with prospective economic advantage claim.

### a. Caremark's Motion to Dismiss Plaintiff's Donnelly Act Claim Is Granted

Plaintiff alleges that Caremark has engaged in "unlawful monopolistic practices" and "conspir[ed] with CVS Health . . . to destroy retail pharmacy competition through contrived abusive audits and rejection of Plaintiff Rxeed's purchase histories." FAC ¶¶ 31, 38. Defendant moves to dismiss Plaintiff's Donnelly Act claim for failure to state a claim. MTD at 8–16.

The New York Donnelly Act declares "[e]very contract, agreement, arrangement or combination whereby . . . [a] monopoly . . . is or may be established or maintained, or whereby [c]ompetition . . . in the conduct of any business, trade or commerce . . . is or may be restrained."

N.Y. Gen. Bus. Law § 340(1). "The Donnelly Act was patterned after the Sherman Act and has been narrowly construed to encompass only those causes of action falling within the Sherman Act." *RxUSA Wholesale, Inc. v. Alcon Lab'ys, Inc.*, 661 F. Supp. 2d 218, 233 (E.D.N.Y. 2009), *aff'd*, 391 F. App'x 59 (2d Cir. 2010). "As a result, the Donnelly Act should generally be construed in light of Federal precedent and given a different interpretation only where State policy, differences in the statutory language or the legislative history justify such a result." *Id.* at 233–34 (internal citation and quotation marks omitted).

To state a claim of anticompetitive agreement under the Donnelly Act, a plaintiff must allege a "contract, agreement, arrangement, or combination" in restraint of trade, and "the existence of a reciprocal relationship of commitment between two or more legal or economic entities." *Rochester Drug Co-op., Inc. v. Biogen Idec U.S.*, 130 F. Supp. 3d 764, 770 (W.D.N.Y. 2015) (internal citation and quotation marks omitted). For any viable antitrust claim, a plaintiff must also "plausibly allege a relevant market," which "is the 'area of effective competition within which the defendant operates' and 'has two components: a product market and a geographic market.'" *P & L Dev., LLC v. Gerber Prods. Co.*, 715 F. Supp. 3d 435, 458 (E.D.N.Y. 2024) (quoting *Concord Assocs., L.P. v. Ent. Props. Tr.*, 817 F.3d 46, 52 (2d Cir. 2016)). Finally, in order to establish antitrust standing, a private plaintiff must allege antitrust injury, which is an "injury [that] is 'of the type the antitrust laws were intended to prevent.'" *Gatt Commc'ns, Inc. v. PMC Assocs., L.L.C.*, 711 F.3d 68, 76 (2d Cir. 2013) (quoting *Daniel v. American Bd. of Emergency Med.*, 428 F.3d 408, 438 (2d Cir. 2005)); *see id.* at 81 (finding that the same antitrust standing standard applies to Donnelly Act claims).

Defendant argues that Plaintiff has failed to allege each of the five elements of its Donnelly Act claim: allegation of a relevant market, a conspiracy, a restraint of trade, a

reciprocal relationship, and an anticompetitive injury. MTD at 8–16. However, the Court need not consider each element, because it is clear that Plaintiff has failed to allege a conspiracy and a reciprocal relationship, and thus its Donnelly Act claim fails on those grounds.

Caremark argues that Rxeed fails to allege the second and fourth elements—a conspiracy and a reciprocal relationship between two or more entities—because Caremark's alleged co-conspirator is CVS, which is Caremark's parent. MTD at 14–15; Reply at 7. "The Supreme Court has found that a parent corporation and its wholly-owned subsidiary are incapable of conspiring with each other due to a presumed unity of purpose." *Yankees Ent. & Sports Network, LLC v. Cablevision Sys. Corp.*, 224 F. Supp. 2d 657, 678 (S.D.N.Y. 2002) (citing *Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752 (1984)). "As a matter of law, only separate entities can conspire in violation of the antitrust laws; thus, a corporate parent and its wholly owned subsidiary are incapable of conspiring" in violation of federal and New York state law. *In re Zinc Antitrust Litig.*, 155 F. Supp. 3d 337, 365 (S.D.N.Y. 2016); *see N. Atl. Utilities, Inc. v. Keyspan Corp.*, 762 N.Y.S.2d 820, 821 (2003) ("A parent corporation and its wholly-owned subsidiaries are considered a single entity under antitrust principles and, therefore, cannot engage in anticompetitive acts.") (internal citations omitted).

Here, Plaintiff acknowledges that CVS owns Caremark, FAC ¶ 4, but alleges "that Caremark unlawfully conspired with its parent entity," Opp. at 3. Additionally, Caremark's Rule 7.1 Statement supports that "Caremark, LLC's sole member is Caremark Rx, LLC. Caremark Rx, LLC's sole member is CVS Pharmacy, Inc. CVS Pharmacy, Inc., is wholly owned by CVS Health Corporation." ECF No. 5 at 1. In its Opposition, Plaintiff cites no law supporting that a parent and subsidiary can be liable for an antitrust conspiracy. Opp. at 10–14. As such, Plaintiff,

who has only alleged a conspiracy between Caremark and CVS, cannot establish this element of the claim.

Furthermore, although the Donnelly Act is "patterned after the Sherman Act" Section 1, 15 U.S.C. § 1, which prohibits multilateral anticompetitive conduct, it does not include a provision akin to Section 2 of the Sherman Act, which prohibits unilateral anticompetitive conduct, such as monopolization. *RxUSA Wholesale, Inc.*, 661 F. Supp. 2d at 233. *See* N.Y. Gen. Bus. Law § 340 (proscribing only "every contract, agreement, arrangement or combination" that results in a monopoly or restraint of trade). The New York Court of Appeals has therefore "interpreted the Donnelly Act to require the existence of a 'reciprocal relationship of commitment between two or more legal or economic entities'" and has determined that "a one-sided practice . . . is outside the scope of the statute." *Rochester Drug Co-op., Inc. v. Biogen Idec U.S.,* 130 F. Supp. 3d 764, 770–71 (W.D.N.Y. 2015) (quoting *State v. Mobil Oil Corp.*, 38 N.Y.2d 460, 464 (1976)). Therefore, the Donnelly Act currently[2] "does not proscribe unilateral action" and failure to allege a conspiracy is fatal to a Donnelly Act claim. *Id.*

Because Plaintiff has failed to allege a conspiracy or reciprocal relationship, it has failed to state its Donnelly Act claim. *See Benjamin of Forest Hills Realty, Inc. v. Austin Sheppard Realty, Inc.*, 823 N.Y.S.2d 79, 84 (2006) ("Since the plaintiff has not shown a conspiracy or reciprocal relationship between two or more entities, there can be no Donnelly Act violation."); *Cnty. Waste & Recycling Serv., Inc. v. Twin Bridges Waste & Recycling, LLC*, 150 N.Y.S.3d 893

[2] New York Senate Bill S335, also known as the "Twenty-First Century Anti-Trust Act," passed the New York Senate on May 6, 2026, but has yet to be passed by the New York Assembly or delivered to the Governor. S. 335, 2025–2026 Reg. Sess. (N.Y. 2025), https://www.nysenate.gov/legislation/bills/2025/S335. This bill would amend the Donnelly Act to include an analogue to the Sherman Act Section 2, which prohibits unilateral monopolization. However, this bill, yet to be enacted, is of no import to this case, other than to emphasize that the Donnelly Act, as currently enacted, does not yet proscribe unilateral anticompetitive conduct.

(N.Y. Sup. 2021) ("Unilateral action is insufficient to support a claimed violation of [GBL] § 340") (internal citation omitted). Accordingly, Caremark's motion to dismiss Plaintiff's Donnelly Act claim is granted.

**b. Caremark's Motion to Dismiss Plaintiff's Tortious Interference with Contractual Relations Claim Is Granted**

Defendant moves to dismiss Plaintiff's tortious interference with contractual relations claim—specifically for failure to allege the existence of a valid contract, knowledge of a contract, a lack of justification, an actual breach, and damages. MTD at 16–19.

"To state a claim for tortious interference with contractual relations, a plaintiff must allege (1) the existence of a valid, enforceable contract between plaintiff and a third party; (2) knowledge of that contract by the defendant; (3) defendant's intentional inducement of a breach by the third party to the contract; and (4) resulting damages." *Wolf Concept S.A.R.L. v. Eber Bros. Wine & Liquor Corp.*, 736 F. Supp. 2d 661, 670 (W.D.N.Y. 2010) (citing *NBT Bancorp Inc. v. Fleet/Norstar Financial Group, Inc.*, 87 N.Y.2d 614, 620–21 (1996)).

Here, Rxeed alleges that it "contracts with numerous New York pharmacies to provide them with a safe and secure platform to purchase and sell prescription drugs for specific patient needs." FAC ¶ 51. Although Caremark objects to Rxeed not having identified specific contracts, MTD at 17, Rxeed has sufficiently alleged contracts with its New York retail pharmacy customers at this stage.

Additionally, Rxeed sufficiently pleads that Caremark knew of Rxeed's contracts with third-party pharmacies, because Rxeed alleges that those third-party pharmacies provided Caremark with Rxeed's purchase history documentation. *See* FAC ¶¶ 21–22, 28–29. These purchase histories clearly would have alerted Caremark to the pharmacies' purchases of drugs through Rxeed. Plaintiff has sufficiently alleged the second element.

Regarding the third element—intentional inducement of breach—Caremark argues both that Rxeed has failed to plausibly allege that Caremark caused any actual breach of a contract, and that any alleged breaches were "without justification." MTD at 18–19. The Court agrees with Caremark that Rxeed has failed to allege any actual breach of its contracts. Although Rxeed alleges that Caremark interfered with its contracts "by specifically instructing [Rxeed's] customers not to do business with Rxeed," there is no indication of what, if any, specific contractual terms were breached. FAC ¶ 72; *see generally* FAC.

In its opposition, Plaintiff argues that it has pled breach by alleging that "Caremark's rejection of [Rxeed's] purchase histories was an express violation of DSCSA's exemption for specific patient needs," and that this rejection "resulted in the loss of dozens of retail pharmacy customers." Opp. at 16 (internal quotation marks omitted). This argument clearly fails. An alleged breach of the DSCSA does not equate to a breach of contract between Rxeed and third-party pharmacies. Although under New York law, a "plaintiff need not cite the specific provisions of the contract it alleged was violated to avoid dismissal" of its breach claim, *Winston Salem RI LLC ex rel. S. Bend Hotel Owner LLC v. Ladder Cap. Fin. LLC*, 192 N.Y.S.3d 58, 60 (2023), Plaintiff here has alleged *no* facts establishing that any terms of its contracts with third-party pharmacies were breached—only that its commercial relationship with the pharmacies was damaged as a whole, *see infra* Section II(c). Plaintiff does not allege that its contracts with the retail pharmacies required that Caremark accept them or that the insurance plans managed by Caremark pay them—in fact, there is no indication that Plaintiff's contracts contemplated anything beyond the facilitation of drug purchases. *See generally* FAC. Rxeed has thus failed to allege any actual breach of its contracts.

Because Rxeed has failed to allege breach, the motion to dismiss Plaintiff's tortious interference with contractual relations claims is granted.

**c. Caremark's Motion to Dismiss Plaintiff's Tortious Interference with Prospective Economic Advantage Claim Is Denied**

Defendant moves to dismiss Plaintiff's claim for tortious interference with prospective economic advantage—specifically for failure to allege the existence of business relationships with third parties, intentional interference, wrongful means, and causation. MTD at 19–23. "Tortious interference with business relations applies to those situations where the third party would have entered into or extended a contractual relationship with plaintiff but for the intentional and wrongful acts of the defendant." *M.J. & K. Co. v. Matthew Bender & Co.*, 631 N.Y.S.2d 938, 940 (1995) (internal citations and quotation marks omitted). "In order to state a cause of action to recover for tortious interference with prospective economic advantage, the plaintiff must allege a specific business relationship with an identified third party with which the defendants interfered." *Influx Cap., LLC v. Pershin*, 131 N.Y.S.3d 712, 715 (2d Dep't. 2020) (quoting *Mehrhof v. Monroe–Woodbury Cent. Sch. Dist.*, 91 N.Y.S.3d 503, 505 (2d Dep't. 2019)).

"The plaintiff must plead more culpable conduct than required for tortious interference with existing contracts." *Id.* (internal citation and quotation marks omitted). "This standard is met where the interference with prospective business relations was accomplished by wrongful means or where the offending party acted for the sole purpose of harming the other party." *Id.* (internal citation omitted). "'Wrongful means' include physical violence, fraud or misrepresentation, civil suits and criminal prosecutions, and some degrees of economic pressure." *L. Offs. of Ira H. Leibowitz v. Landmark Ventures, Inc.*, 15 N.Y.S.3d 814, 818 (2d

Dep't 2015) (quoting *Guard–Life Corp. v. Parker Hardware Mfg. Corp.,* 50 N.Y.2d 183, 191 (1980)).

First, for the reasons stated with regard to Plaintiff's tortious interference with contractual relations claim, Plaintiff has sufficiently alleged the first element here—that Rxeed has a business relationship with third-party New York retail pharmacies and that Caremark knew of those relationships. *See supra* Section II(b).

Second, Rxeed has sufficiently alleged Caremark intentionally interfered with Rxeed's business relationships, because Rxeed alleges that Caremark "refused to accept Rxeed's purchase history" even though Rxeed provided Caremark with the necessary documentation and had previously accepted purchases through Rxeed. FAC ¶¶ 28–29. This alleged unwarranted refusal to accept pharmacies' purchases through Rxeed and statements to Rxeed's customers to stop using the Rxeed platform, FAC ¶ 52, is sufficient to plead intentional interference with Rxeed's business relationships.

Third, Rxeed sufficiently alleges Caremark's culpability because Caremark allegedly interfered through "wrongful means"—specifically, through "extreme and unfair" economic pressure. *Advanced Glob. Tech. LLC v. Sirius Satellite Radio, Inc.*, 836 N.Y.S.2d 807, 810 (Sup. Ct.), *aff'd as modified*, 843 N.Y.S.2d 220 (2007). "The case law does not reveal any precise definition of 'extreme and unfair' economic pressure," although it is clearly a very high bar. *Friedman v. Coldwater Creek, Inc.*, 551 F. Supp. 2d 164, 172 (S.D.N.Y. 2008), *aff'd*, 321 F. App'x 58 (2d Cir. 2009) (collecting cases). "Cases in which courts have found economic pressure sufficiently alleged typically involve what amount to strong-arm tactics or a threat of negative consequences should the third party not accede to the defendant's demands." *Corning*

*Inc. v. Shenzhen Xinhao Photoelectric Tech. Co.*, 546 F. Supp. 3d 204, 217 (W.D.N.Y. 2021) (collecting cases).

At this motion to dismiss stage, Plaintiff has sufficiently alleged that Caremark is strong-arming Rxeed's customers—independent retail pharmacies—into no longer doing business with Rxeed. As alleged, Caremark exercises enormous influence over independent retail pharmacies through its "exclusive agreement[s] to administer the prescription benefit plans of State/Federal and private healthcare plans in New York," which it has used to "terminate competing independent retail pharmacies." FAC ¶¶ 41, 43. As Rxeed alleges, an independent retail pharmacy would have no choice but to comply with a PBM's demands or sacrifice its relationships with customers insured through the government and private insurance plans administered by that PBM. *See* FAC ¶¶ 11–13. Without such compliance with the PBM's requirements, that pharmacy would be unable to process its customers' claims for prescription drugs. *Id.* Essentially, as Plaintiff describes it, Caremark has almost complete control over these entities. *Id.* And, as alleged, Caremark has used this control to refuse to reimburse pharmacies who use Rxeed's platform, subject them to expensive audits, and ultimately terminate them from the Caremark network. *Id.* ¶¶ 23, 32, 43, 47, 60, 83.

Caremark does not dispute that it exerts a high level of control over retail pharmacies. *See* Reply at 10–12. Instead, Caremark argues that the purchases facilitated by Rxeed did not comply with the DSCSA, and therefore Caremark's refusal to reimburse Rxeed's customers was lawful and justified. *See* MTD at 22. The Court does not consider such factual disputes at this motion to dismiss stage. Rather, the Court takes as true Rxeed's allegations that Caremark's refusal to accept Rxeed's purchase histories was unlawful and arbitrary, particularly because Caremark had previously accepted Rxeed's purchase histories. *See* FAC ¶¶ 21, 28–29.

Finally, Rxeed has sufficiently alleged the fourth element of causation, because it has alleged that but for Caremark's denial of Rxeed's purchase histories and instruction to retail pharmacies to stop transacting with Rxeed, Rxeed would have continued its relationships with numerous third-party retail pharmacies. *See* FAC ¶¶ 28–29, 54–55, 58–59, 82–85. Specifically, Plaintiff alleges that due to Caremark's conduct, Rxeed has lost over $2 million dollars in revenue. *Id.* ¶¶ 58–59, 82–85.

Therefore, the Court denies dismissal of Plaintiff's tortious interference with economic advantage claim.

## CONCLUSION

In light of Plaintiff's filing of its Amended Complaint, the Court DENIES Defendant's first Motion to Dismiss Plaintiff's Complaint as moot. *See* ECF No. 14.

Regarding Caremark's second Motion to Dismiss Plaintiff's Amended Complaint, ECF No. 33, the Court GRANTS Caremark's Motion to Dismiss Plaintiff's Donnelly Act and tortious interference with contractual relations claims. The Court DENIES Caremark's Motion to Dismiss Plaintiff's tortious interference with prospective economic advantage claim.

Furthermore, the Court ORDERS the parties to submit a joint proposed case management plan and scheduling order, no later than **October 20, 2026**. Additionally, it is hereby ORDERED that all parties appear for an initial pretrial conference with the Court on **October 27, 2026**, at **11:00 a.m**. The conference will be held remotely by Microsoft Teams. Counsel will receive Microsoft Teams log-in credentials at the email addresses listed on the docket. The public listen-only line may be accessed by dialing: 646-453-4442 | Access Code: 1185482221#.

The Clerk of Court is directed to terminate ECF Nos. 14 and 33.

Dated: September 29, 2026
White Plains, New York

SO ORDERED.

Jessica Clarke

JESSICA G. L. CLARKE
United States District Judge